UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARK KIRKLAND,<br>    *Plaintiff,* | §<br>§<br>§ | |
| vs. | §<br>§<br>§ | CIVIL ACTION NO.<br>    4:25-cv-1412 |
| TIM O'HARE<br>    *In his personal and official*<br>    *Capacities*, and<br>TARRANT COUNTY,<br>    *Defendants* | §<br>§<br>§<br>§<br>§<br>§ | |

---

## COMPLAINT

---

COMES NOW, Plaintiff Mark Kirkland ("Plaintiff") and files this

Complaint against Defendants Tim O'Hare and Tarrant County, Texas (collectively

"Defendants").

### I.    JURISDICTION AND VENUE

1.    This is a civil rights action in which Plaintiff seeks relief for the

violation of his rights secured by Art. I, §§ 3, 8, 19, and 27, Tex. Const.; 42 U.S.C.

§ 1983, and the First Amendment of the United States Constitution.

COMPLAINT – BISHOP MARK KIRKLAND

2.      Jurisdiction of this Court is found upon 28 U.S.C. § 1331 since this action arises under the Constitution and the laws of the United States.

3.      Venue is proper in the United States District Court for the Northern District of Texas because the events complained of occurred in Tarrant County, Texas.

4.      Pursuant to 42 U.S.C. § 1983 and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against all of the Defendants in their individual capacity, for the violations of Plaintiffs Constitutional rights and harm caused by their actions/inactions.

## II.    PARTIES

5.      Plaintiff MARK KIRKLAND (hereinafter "Bishop Kirkland") is a law-abiding citizen of the United States, an ordained minister for over 45 years serving as the Senior Pastor of Greater Saint Mark Ministries, an honorably retired United States Marine, and a resident of the State of Texas.

6.      Defendant TIM O'HARE (hereinafter "Defendant O'Hare") was at all pertinent times the elected County Judge serving as the presiding officer of the Tarrant County Commissioners Court.  Defendant O'Hare is being sued in his official and personal capacities.

7.      Defendant TARRANT COUNTY (hereinafter "Defendant County") is a political subdivision in the State of Texas.

COMPLAINT – BISHOP MARK KIRKLAND

8.      Each and all of the acts of the individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment with Tarrant County.

9.      Each and all of the acts of the individual Defendants were committed by these Defendants despite their knowledge that they were engaging in unlawful and unconstitutional acts, and yet they did them anyway, knowingly, intentionally, and with deliberate indifference to Plaintiff's clearly established constitutional rights.

### III.   PREAMBLE

*"Without Freedom of Thought, there can be no such thing as Wisdom; and no such thing as public liberty, without Freedom of Speech."*

Benjamin Franklin, Letter from Silence Dogood, printed in The New England Courant, July 9, 1722

*"For if Men are to be precluded from offering their Sentiments on a matter, which may involve the most serious and alarming consequences, that can invite the consideration of Mankind, reason is of no use to us; the freedom of Speech may be taken away, and, dumb and silent we may be led, like sheep, to the Slaughter."*

George Washington, Address to the officers of the army, March 15, 1783

COMPLAINT – BISHOP MARK KIRKLAND

## IV.    FACTUAL ALLEGATIONS

### A.  Plaintiff's Background

10.      Bishop Kirkland is a retired United States Marine with no history of criminal activity.  He has been an ordained minister for over 45 years and is a graduate of Grace Seminary.  He is currently the Senior Pastor of Greater Saint Mark Ministries.  He is a single parent, a long-time activist on constitutional issues that affect the poor, disadvantaged, and excluded communities, and an involved voter.

### B.  December 9, 2025, Tarrant County Commissioners Meeting

11.      On December 9, 2025, the Tarrant County Commissioners Court held an open meeting in accordance with Texas Government Code Chapter 551.

12.      A speaker was called to give remarks on agenda item F1, and gave supportive comments regarding funding the MHMR jail diversion center.

13.      Upon completion of her remarks, several members of the audience began clapping their approval of the speaker's comments.

14.      Defendant O'Hare told the crowd to "shhhhh!" to silence their applause.

15.      It should be noted that when Defendant O'Hare makes laudatory remarks regarding a public employee, members of the audience are permitted to clap, but when members of the public criticize the government officials or programs, Defendant O'Hare prohibits any expression of speech, like clapping, that is approving of the speaker's comments.

COMPLAINT – BISHOP MARK KIRKLAND

16.    The practice of silencing and criminalizing clapping has roots in 1960s-era Jim Crow policies where black Americans were charged with breaches of the peace for singing patriotic and religious songs while stamping their feet and clapping their hands.

17.    "[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech . . . is . . . protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. . . . There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups."[1]

18.    The Supreme Court has already found that clapping, along with singing and stamping feet during a peaceful protest, was protected under the First Amendment. In *Edwards*, the Court emphasized that the conduct was peaceful, nonviolent, and intended to express grievances or acceptance, thus falling within the scope of protected expressive activity.[2]

19.    However, Defendant Tarrant County's "rules of decorum" only permit such express conduct when Defendant O'Hare personally blesses or sanctions such conduct as

---

[1] *Terminiello v. Chicago*, 337 U.S. 1, 4-5 (1949).
[2] *Edwards v. South Carolina*, 372 U.S. 229, 83 S. Ct. 680 (1963).

COMPLAINT – BISHOP MARK KIRKLAND

justified, clearly a content-based restriction on free speech that is clearly repugnant to the Constitution.

20.     Defendant Tarrant County's "rules of decorum" prohibit "actions of approval or disapproval from the audience, such as . . . clapping . . . except that orderly clapping during the Proclamations, Resolutions, and Presentations section of the agenda is permissible."

21.     The clapping that Defendants allow during those times can often be extended, loud, and unnecessarily delay progress of the agenda, unlike clapping that occurs after a particularly well-received public comment which is generally short and muted.

22.     Bishop Kirkland registered to speak during public comments on December 9, 2025, about agenda item F1, which regarded consideration of an interlocal agreement between Tarrant County and MHMR of Tarrant County.[3]

23.     In prefacing his remarks, Bishop Kirkland remarked that "Lord, I live in America where people cannot clap.  That is insane to me."

24.     Defendant O'Hare immediately cut off Bishop Kirkland's speech by telling him "you can sit down if you would like to sit down."

25.     Bishop Kirkland did NOT want to sit down; he wanted to address the Commissioners Court on a matter of public concern.

---

[3] https://www.youtube.com/live/QeM8cmlSbZk?si=vVi-ujLkTETcBzoI&t=7236

COMPLAINT – BISHOP MARK KIRKLAND

26.     When Bishop Kirkland attempted to continue his comments on agenda item F1, Defendant O'Hare cut him off again before he got so much as a single word out of his mouth, and told him, "your time is done. Sit down. Go. It's not commentary on how we run the court.  Your comments are limited to this item.  Take a seat, you're not talking on this one," and immediately called the next speaker.

27.     The next speaker, a white male, began his remarks with a statement about his health, something that also was not on the agenda, yet Defendant O'Hare did not immediately silence that speaker.

28.     Later in the meeting, Mr. Bo Burnham, a white male, was called to speak on item Q3.[4]  For more than one minute, Mr. Burnham was permitted to speak on another agenda item that was not up for discussion before being *politely* corrected that he was speaking off agenda.  He was not told that his "time is done. Sit down. Go. Take a seat, you're not talking on this one" unlike the way Bishop Kirkland, a black male, was treated and spoken to. In fact, Mr. Burnham was permitted to come back and speak on the proper topic **and** given his full time.[5]

29.     Defendant Tarrant County has a policy that bans, *inter alia,* "personal attacks, impertinent, profane, obscene, or slanderous remarks."

---

[4] https://www.youtube.com/live/QeM8cmlSbZk?si=VBeNVmO-1q03pO_e&t=9648
[5] It should be noted that Mr. Burnham is a former elected official as well.

7

COMPLAINT – BISHOP MARK KIRKLAND

30.     While obscenities and slander are not protected speech, the prohibition on "personal attacks and profanity" is an unconstitutional and unlawful violation of protected forms of expression under the First Amendment.[6]

31.     Defendant O'Hare knew or should have known that his "rules of decorum" were facially unconstitutional.

32.     Rather than recognize current rules of decorum were unconstitutional, Defendant O'Hare and Tarrant County unconstitutionally silenced a citizen speaking on an issue of public importance that Bishop Kirkland wished to address.

33.     Bishop Kirkland made a brief comment at the beginning of his ceded time for public comments that was directly critical of the fact that, at least in Defendant O'Hare's presence, people don't have a right to clap or express their approval of a statement.

34.     Bishop Kirkland's statement was a criticism of an act of Defendant O'Hare for "shhhhh"ing members of the public who expressed their approval by clapping.

35.     The clapping did not substantively or significantly disrupt the orderly conduct of the meeting in any way.

36.     Texas Government Code § 551.007(e) specifically prohibits Defendant O'Hare from "prohibiting public criticism of the government body, including criticism of any act, omission, policy, procedure, program, or service." This specifically means that the prohibition on "personal attacks" violates not only state law but the First Amendment.

---

[6] Tex. Gov. Code 551.007(e) prohibits Defendants from criminalizing or suppressing speech that is critical of government entities.

COMPLAINT – BISHOP MARK KIRKLAND

37.    Clapping is specifically protected as expressive speech as long as it does not hinder, interfere with, or disrupt a public meeting. The constitutional guarantees of freedom of speech forbid the States to punish the use of speech not within narrowly limited classes of speech. Those limited classes are fighting words, [7] obscenity (speech that satisfies the prurient interests of the speaker or recipient), [8] child pornography,[9] and the incitement to imminent lawless activity. [10]

38.    Additionally, the First Amendment prohibits the criminalizing or censoring of speech that is merely insulting. [11] "Speech is often provocative and challenging. [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." [12]

39.    Bishop Kirkland's words were not fighting words.

40.    Bishop Kirkland's words were not obscenity.

41.    Bishop Kirkland's words were not designed to incite violence.

42.    Bishop Kirkland's speech did not in any way disrupt, interfere with, or hinder the proceeding or orderly conduct of the meeting.

43.    A commissioners court in Texas has the unique combined legislative, judicial, and executive powers, depending on their actions. A county commissioners court

---

[7] *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

[8] *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

[9] *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

[10] *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 73 L.Ed.2d 430 (1969).

[11] *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); See also *Houston v. Hill*, 482 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

[12] *Terminello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed.2d 1131 (1949).

COMPLAINT – BISHOP MARK KIRKLAND

is not an Article V court in Texas. However, commissioners courts in Texas have very

little judicial authority and when the commissioners meet in open meeting for the purpose

of legislating county business, they are acting in a legislative role and not a judicial one.

The commissioners courts' main judicial duties are to ensure that funding is provided to

the county courts, justices of the peace, jails, and other judicial efforts. It does not

oversee cases or controversies. In other words, a county commissioners meeting is not

much different than a city council meeting. [13]

44.     The Constitution is not a foreign concept to a commissioners court nor is the

commissioners court exempt from its responsibilities to protect the civil rights of citizens

and members of the public, especially while those individuals are given time to give

commentary on matters of public interest in a public forum.

45.     Bishop Kirkland was given no warning before being immediately silenced

and treated with disrespect and derision by Defendant O'Hare.

46.     Defendants O'Hare frequently violates the free speech rights of citizens

who are called upon during public comment based on their content of their speech that

may be critical of the governing body or Defendant O'Hare personally.

47.     At all times contained within this complaint, Defendant O'Hare was

enforcing the "rules of decorum" policies of Defendant Tarrant County in violating

Bishop Kirkland's right to expressive speech.

---

[13] Texas Association of Counties, *2021 Guide to Texas Laws for County Officials,* pp 54-55. November 2021. Accessed January 30, 2025. https://www.county.org/getmedia/48ae53ae-b6b1-428d-ae50-384ec747ac7c/2021-Guide-to-Laws-for-County-Officials.pdf

COMPLAINT – BISHOP MARK KIRKLAND

## V. CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF CIVIL RIGHTS UNDER ART. I, §§ 3, 8, 19, AND 27, TEX. CONST.; 42 U.S.C. § 1983, AND THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
### (Unlawfully Preventing Protected Conduct)
### (against all Defendants)

48.    Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

49.    At all times relevant herein, Defendants were acting under color of state law.

50.    Plaintiff has a First Amendment right to express himself on matters of public concern in a limited public forum set aside for citizens to seek redress for their grievances, such as a County Commissioners Court Meeting.

51.    Plaintiff has a constitutional and statutory right to be present at public hearings and speak on agenda items.

52.    Plaintiff was engaged in constitutionally and statutorily protected conduct when discussing his opinions on agenda item F1 which is a matter of public interest.

53.    Defendant O'Hare enforced unconstitutional "rules of decorum" that prohibit criticism of public officials and the use of expressive speech like clapping.

COMPLAINT – BISHOP MARK KIRKLAND

54.     Texas Government Code § 551.007(e) states that a "governmental body may not prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service."

55.     Defendant O'Hare clearly violated state law as Plaintiff criticized the actions of Defendant O'Hare "shhhhh"ing members of the public who were expressing approval of a speaker's comments.

56.     Defendant O'Hare, without warning, silenced Bishop Kirkland within seconds of his speech, and prohibited him from exercising his right to free speech, and seek redress from government.

57.     All Defendants intentionally, knowingly, maliciously, recklessly, and/or unreasonably prevented Bishop Kirkland from expressing his views on matters of public concern.

58.     All Defendants intentionally, knowingly, maliciously, recklessly, and/or unreasonably prevented Bishop Kirkland from addressing elected officials during an open meeting on a matter of public interest.

59.     Bishop Kirkland had a clearly established constitutional right speak on an agenda item.

60.     Bishop Kirkland had a clearly established constitutional and statutory right to express himself and criticize public officials without censorship or content-based discrimination based on speech.

COMPLAINT – BISHOP MARK KIRKLAND

61.    Prohibiting certain forms of spoken expression is content-based discrimination because it limits what type of speech is "acceptable."

62.    The Defendants' acts deprived Bishop Kirkland of the rights, privileges, and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States, and in violation of Art. I, §§ 3, 8, 19, and 27, Tex. Const.

63.    As a proximate cause of the illegal and unconstitutional acts of the Defendants, Bishop Kirkland was harmed and suffered damages as a result.

## COUNT II
## MONELL LIABILITY
### (against Defendant Tarrant County)

64.    Bishop Kirkland restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

65.    Defendants' actions, and the actions of Tarrant County demonstrate a policy, practice, or custom to deprive Bishop Kirkland and other government accountability activists of their First Amendment and Texas Constitutionally protected rights.

66.    On multiple occasions, individual Defendants have detained, arrested, or otherwise charged activists for speaking on critically of the governing body or and/or its members.

COMPLAINT – BISHOP MARK KIRKLAND

67.    Defendants have an unconstitutional policy called the Rules of Decorum that Defendant O'Hare enforces with an iron and selective fist against critics.

68.    Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprive Bishop Kirkland of his right to be free from state-sponsored violence and retaliation for protected conduct.

69.    At all times relevant, Bishop Kirkland had a clearly established right to be free from unlawful policies, practices, and customs.

70.    The Rules of Decorum are unlawful as they conflict with Texas law permitting criticism of government officials. Thus, it is an unlawful policy or custom which was the moving force behind Bishop Kirkland 's injuries.

71.    The Rules of Decorum are unconstitutional as they conflict with First Amendment of the United States Constitution and Art. I, §§ 3, 8, 19, and 27, Tex. Const. prohibiting content-based discrimination of speech.

72.    Defendant O'Hare is a final policy maker for Defendant County.

73.    Even if the Rules of Decorum were not unlawful , they were an officially adopted policy that had plainly obvious consequences resulting in constitutional violations.

74.    Further, the County had notice of such recurring constitutional violations stemming from the Rules of Decorum.

COMPLAINT – BISHOP MARK KIRKLAND

75.    As a direct and proximate result of Defendant County's unlawful actions, Bishop Kirkland suffered injuries and damages for his mental and emotional injury, and for mental anguish, humiliation and embarrassment.

## QUALIFIED IMMUNITY

76.    Defendants are not entitled to a qualified immunity defense.

77.    Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.[14]

78.    To review claims of qualified immunity, a court first asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the government official's conduct violated a constitutional right.[15]  If so, the court must then consider whether the right was clearly established, that is, whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.[16]

79.    Bishop Kirkland has alleged several violations of his constitutional rights as well as violation of plain language statutory laws, meeting the first prong to overcome qualified immunity.

---

[14] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).
[15] *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).
[16] *Id*. at 202, 121 S. Ct. at 2156.

COMPLAINT – BISHOP MARK KIRKLAND

80.     Clearly established case law puts Defendants on notice that Plaintiff's actions were protected and have already clarified that speech critical of government policies, practices, or acts is protected speech unless it falls within narrowly defined categories like fighting words, obscenity, or incitement to violence.[17]

81.     Qualified immunity attaches to a civil complaint against a government official when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. This doctrine shields government officials performing discretionary functions from liability under Section 1983 for civil damages.  Here, it is clear that Defendants violated clearly established law and they are not entitled to qualified immunity.

**WHEREFORE**, Plaintiff Mark Kirkland demands judgment and prays for the following relief, jointly and severally, against all Defendants.

    a.  Punitive damages $250,000;

    b.  Reasonable attorney's fees and costs of this action;

    c.  Any such other relief as appears just and proper.

## <u>JURY DEMAND</u>

---

[17] *Cohen v. California*, 403 U.S. 15 (1971); *Chaplinsky v. N.H.,* 315 U.S. 568 (1942); *Houston v. Hill*, 482 U.S. 451 (1987); *R.A.V. v St. Paul*, 505 U.S. 377 (1991).

COMPLAINT – BISHOP MARK KIRKLAND

Bishop Kirkland demands a trial by jury of all issues so triable, pursuant to

Fed. R. Civ. P. 38(b).

Respectfully Submitted,


LAW OFFICES OF CJ GRISHAM
PLLC

**CJ GRISHAM**
Texas State Bar No. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
Telephone: 254-405-1726


*COUNSEL FOR PLAINTIFF*

COMPLAINT – BISHOP MARK KIRKLAND